UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FRANK LANDON ADAMS, JR.,

      Plaintiff,

v.                              CASE NO. 3:12-cv-1026-J-99MMH-JBT

JP MORGAN CHASE BANK, N.A., etc.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss Counts IV–VI of Plaintiff's Amended Complaint ("Motion") (Doc. 5), Plaintiff's Response in Opposition ("Response") (Doc. 12), and Defendant's Reply ("Reply") (Doc. 31). On December 20, 2012, the Motion was referred to the undersigned for a report and recommendation. (Doc. 32.) For the reasons stated below, the undersigned **RECOMMENDS** that the Motion be **DENIED** and that Defendant be **directed to answer these counts** (*see* Doc. 6 at 13–14).

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed.R.Civ.P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D.Fla.R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

I.   **Summary of Recommendation**

Plaintiff, proceeding *pro se*, filed the operative complaint ("Complaint") (Doc. 2) on September 2, 2012. The Complaint contains six counts, three alleging violations of the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01–760.11 (2009) ("the Florida CRA") and three alleging negligence. The Motion is directed only to the negligence counts. It argues that Plaintiff's negligence claims are barred by the exclusive remedy provision of Florida's Workers' Compensation Law, Fla. Stat. §§ 440.01–440.60 (2009).

The undersigned recommends that the Court deny Defendant's Motion. Although the Florida Workers' Compensation Law's exclusivity provision bars common law negligence suits for accidental workplace injuries in almost all circumstances, its application to Plaintiff's claims depends on facts not apparent from the face of the Complaint. In particular, Defendant's actions or even omissions concerning a workers' compensation injury may estop Defendant from asserting the workers' compensation exclusivity bar. *See, e.g.*, *Ocean Reef Club, Inc. v. Wilczewski*, 99 So. 3d 1, 2–4 (Fla. Dist. Ct. App. 2012); *Coastal Masonry, Inc. v. Gutierrez*, 30 So. 3d 545, 548–49 (Fla. Dist. Ct. App. 2010).

## II. Background

### A. Plaintiff's Factual Allegations[2]

Plaintiff alleges that while employed at Defendant's predecessor, Washington Mutual Bank ("WaMu"),[3] he developed two herniated disks in his lower back. This herniation began in November of 2005 and produced chronic lower back pain and sciatica. (Doc. 2 at ¶¶ 15–16.) Work exacerbated Plaintiff's pain because it forced him to sit in an uncomfortable position for extended times. Commuting exacerbated Plaintiff's pain for the same reason.

Plaintiff began to miss work. He experienced "occasional absences" (*Id.* at ¶ 25) and took medical leave from January 23, 2006 through February 21, 2006 (*Id.* at ¶ 26) and again from June 9, 2008 through July 6, 2008.[4] From 2007 through 2009, Plaintiff's immediate supervisor "commented frequently about her observations of the Plaintiff's apparent physical distress." (*Id.* at ¶ 29.) Plaintiff reported his condition to multiple supervisors since it began. As Plaintiff alleged in his Complaint—

---

[2] "In ruling on a 12(b)(6) motion, the Court accepts the [well-pleaded] factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dept. of Health & Human Services Ctrs for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

[3] Defendant JPMorgan Chase Bank, N.A., purchased WaMu during the episode Plaintiff describes in his Complaint. At this time, Defendant does not dispute that it is liable for WaMu's conduct.

[4] The Complaint actually alleges that Plaintiff took medical leave from June 9, 2008 through July 6, *2009*. However, this appears to be a typographical error.

> [Each supervisor was] aware of his back condition and sciatica from his discussions with them, from his occasional absences being reported as due to back and sciatica pain, their knowledge of his ongoing treatments, from visual observance of his awkward attempts to find a comfortable sitting position, his inability to sit in a given position for any length of time, and his often contorted posture in sitting, standing or walking.

(*Id.* at ¶ 25.)

Plaintiff asked Defendant for accommodations for his pain. Specifically, Plaintiff asked to participate in a work-from-home program that Defendant advertised on its website. (*Id.* at ¶ 31.) Plaintiff's supervisor initially denied this request because she was not comfortable with meeting with Plaintiff exclusively by telephone. (*Id.*) Plaintiff's supervisor then reconsidered. She recommended Plaintiff pursue his request through application to the Workplace Accommodations Team, a group apparently designed to evaluate such requests based upon medical need.

Plaintiff completed his Workplace Accommodations application on November 4, 2008. (*Id.* at ¶ 33.) In subsequent correspondence with the Workplace Accommodations Team, Plaintiff "stress[ed] the issue of driving" but "pointed out that his condition was compounded by being 'forced to sit in an unvaried position for the remainder of the day." (*Id.* at ¶36.) The team assigned a case specialist to Plaintiff's matter. (*Id.* at ¶ 37.) Plaintiff and the case specialist talked on the phone and exchanged many emails. (*Id.*) Plaintiff

continued to email his supervisor about his pain and his desire to work from home. (*Id.*)

On or about November 30, 2008, Defendant notified Plaintiff that it was eliminating his position effective February 28, 2009. Defendant gave as a reason that JPMorgan Chase Bank, N.A., had acquired WaMu, and that WaMu was consequently downsizing. However, Plaintiff was permitted to apply for other positions within the new company.

On or about December 10, 2008, Plaintiff provided his supervisor with a report from his treating physician describing his condition. (*Id.* at ¶ 40.) The report included a recommendation that Plaintiff not engage in "prolonged walking or sitting" until cleared by a neurosurgeon. (*Id.*) The report further suggested that Plaintiff participate in a telecommute program, if one were available. (*Id.*)

After receiving notice that his position would be terminated, Plaintiff contacted a co-worker, Ms. Judy Brooks, who had hiring authority for other positions within the company. (*Id.* at ¶ 39.) On or about January 7, 2009, Ms. Brooks interviewed Plaintiff for a job as a Business Analyst. Ms. Brooks informally offered Plaintiff the position. (*Id.* at ¶ 42.)

That same day, Plaintiff received word that the Workplace Accommodations Team had denied his request to work from home because "driving is not a task directly associated with your position." (*Id.* at ¶ 43.) Ms. Brooks confirmed that Plaintiff would not be allowed to work from home if he accepted the Business Analyst position. (*Id.* at ¶ 44.)

5

Plaintiff asked his then-current supervisor and Ms. Brooks to reconsider. Plaintiff advised his supervisor that "without a workplace accommodation in place, surgery to correct [Plaintiff's] issues was imminent." (*Id.* at ¶ 45.) Plaintiff received a response from a different manager offering Plaintiff the opportunity to work from home one day a week until his position expired. (*Id.* at ¶ 50.) Plaintiff also advised this manager that if Defendant could not accommodate his back pain, he would have surgery to address the issue. (*Id.* at ¶ 53.)

Plaintiff's last scheduled day of employment was February 27, 2009. (*Id.* at ¶ 51.) That same day, Plaintiff had back surgery. (*Id.* at ¶ 54.) "Plaintiff underwent a lumbar laminectomy fusion, with the insertion of four titanium rods, performed by his neurosurgeon Dr. Troy Trimble at North Florida Regio[nal] Hospital in Gainesville, Florida." (*Id.*) This surgery failed. (*Id.* at ¶ 58.) Even after several months of subsequent treatment, Plaintiff was much worse than he was before the surgery. (*Id.* at ¶ 57–58.) On March 14, 2012, Plaintiff had a Residual Functional Capacity evaluation. (*Id.* at ¶ 59.) This evaluation concluded that Plaintiff's condition is "permanent, totally disabling, and that Plaintiff will never return to any meaningful employment." (*Id.*)

On August 24, 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 55.) On September 2, 2009, the same complaint was filed with the Florida Commission on Human Relations ("FCHR"). The Amended Complaint includes as an attachment a letter dated

March 31, 2010 from the EEOC denying Plaintiff's claim and notifying Plaintiff of his right to sue.[5] (*Id.* at 22.)

### B.  Plaintiff's Negligence Claims

Plaintiff filed his initial complaint in the Circuit Court for the Fourth Judicial Circuit, in and for Duval County Florida, on August 13, 2012. (Doc. 1 at 17–61.) On August 23, 2012, Plaintiff filed the operative six-count Amended Complaint. (Doc. 1 at 5; Doc. 2.) On September 18, 2012, Defendant filed its Notice of Removal. (Doc. 1.)

Counts I–III of the Complaint allege violations of the Florida CRA. Because the instant Motion concerns only Counts IV–VI, this Report and Recommendation does not address Counts I–III.

Counts IV–VI allege claims of negligence. Count IV alleges that Defendant had a duty "to protect Plaintiff from discrimination in the workplace" (Doc. 2 at ¶ 101) and that Defendant "had a duty to correct and prevent" the wrongful actions of its managerial and supervisory employees (*Id.* at ¶ 105). It alleges that Defendant breached these duties. (*Id.* at ¶ 107.) These failures, these counts aver, created an intolerable working condition that constructively discharged Plaintiff. (*Id.*) Further, "Plaintiff's loss of employment by constructive discharge was a direct and proximate cause of Plaintiff's election for corrective surgery, the

---

[5] The letter states that Plaintiff has ninety days from the date of the letter to bring suit for violation of Title VII of the Americans with Disabilities Act. (Doc. 2 at 22.)

7

failure of which resulted in [Plaintiff's] total permanent disability." (*Id.* at ¶ 109.) Count IV continues, "Plaintiff has suffered and will continue to suffer irreparable physical trauma, financial loss, emotional trauma, irreparable injury to his self[-]image, self[-]esteem, credit-worthiness and a reduction in his quality of life as a result of the Defendant's negligent failure to provide the required duty of care." (*Id.* at ¶ 110.) Plaintiff also alleges that Defendant's actions were "willful, wanton and negligent." (*Id.* at ¶ 111.)

Count V alleges Defendant had a duty "to provide Plaintiff with a safe and healthy workplace environment." (*Id.* at ¶ 113.) Plaintiff alleges that Defendant breached this duty, "subjecting Plaintiff to continuous physical harm." (*Id.* at ¶ 116.) Plaintiff further alleges that this breach constituted a constructive discharge (*Id.* at ¶ 117) and "was a direct and proximate cause of Plaintiff's election for corrective surgery, the failure of which resulted in total permanent disability." (*Id.* at ¶ 118.) This Count also includes a paragraph that alleges that "Defendant, through its agents, Executives and Corporate Officers, willfully, wantonly and repeatedly denied, against Plaintiff's physician's orders and despite Plaintiff's protests, Plaintiff's request for a workplace that would allow him to work in [a] relative[ly] pain-free environment." (*Id.* at ¶ 114.) Plaintiff further alleges that Defendant "continued with the same course of action with intent to harm the Plaintiff." (*Id.* at ¶ 117.)

Count VI contains substantially the same allegations as does Count V and is based upon the same alleged duty to provide "a safe and healthy workplace

8

environment." (*Id.* at ¶ 122.) However, whereas Count V alleges that as a result of Defendant's actions plaintiff suffered "physical trauma" (*Id.* at ¶ 118), Count VI alleges that "Plaintiff has suffered irreparable *financial loss*, emotional trauma, irreparable injury to his self[-]image, self-esteem and credit-worthiness." (*Id.* at ¶ 126 (emphasis added).)

Defendant's Motion asks the Court to dismiss these last three counts for failure to state a claim. Defendant argues only that, under the facts Plaintiff alleges, Florida's Workers' Compensation Law provides the exclusive remedy for these claims. (Doc. 5.)

### III. Discussion

#### A. Rule 12(b)(6) Standard

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678. "[B]are assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681.

However, it is well-established that the pleadings of *pro se* litigants, like Plaintiff, must be liberally construed and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007).

Further, Defendant asks the Court to dismiss Plaintiff's claims on the basis of an affirmative defense under Florida law. *See Wright v. Hartford Underwriters Ins. Co.*, 823 So. 2d 241, 242 n.3 (Fla. Dist. Ct. App. 2002); *Moucha v. Burger King Corp.*, 450 So. 2d 335, 336 (Fla. Dist. Ct. App. 1984). Ordinarily, "affirmative defenses must be raised in a responsive pleading." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). "An affirmative defense may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim, but only if the defense is apparent on the face of the complaint." *Hudson Drydocks Inc. v. Wyatt Yachts, Inc.*, 760 F.2d 1144, 1146 n.3 (11th Cir. 1985). A defense appears "on the face of the complaint" if the complaint's own allegations establish the

existence of the affirmative defense such that the complaint is "essentially self-defeating." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).

### B. Analysis

Defendant argues that the exclusive remedy provision, Fla. Stat. § 440.11 (2009), of Florida's Workers' Compensation Law bars the claims contained in Counts IV–VI. As Defendant acknowledges, this is an affirmative defense (Doc. 5 at 3 n.3). Defendant's Motion should therefore be denied if the applicability of the Workers' Compensation Law's exclusive remedy provision is not apparent from the face of the Complaint and the Complaint otherwise states a plausible claim.

Whether the Workers' Compensation Law's exclusive remedy provision bars Plaintiff's negligence counts is a matter of substantive Florida law. In applying substantive Florida law, this Court must predict how the Florida Supreme Court would rule. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). If the Florida Supreme Court has not addressed an issue, this Court should generally follow the relevant decisions of Florida's intermediate appellate courts unless persuasive evidence demonstrates that the Florida Supreme Court would conclude otherwise. *Id.*

In general, Florida's Workers' Compensation Law provides a covered employee's exclusive remedy for all accidental workplace injuries. "For

employees within the statute's reach, workers' compensation is the exclusive remedy for 'accidental injury or death arising out of work performed in the course and scope of employment.'" *Turner v. PCR, Inc.*, 754 So. 2d 683, 686 (Fla. 2000) (quoting Fla. Stat. § 440.09(1) (1997)); Fla. Stat. § 440.11 (2009). "While providing employees with benefits on a no-fault basis, the flip side of this scheme is its provision for immunity from common-law negligence suits for employers covered by the statute." *Turner*, 754 So. 2d at 686.

However, the exclusivity provision is subject to two statutory exceptions and to common law principles such as estoppel. The first statutory exception is that for exclusivity to apply, Defendant must have had appropriate workers' compensation coverage, or have demonstrated the ability to self-insure. *See* Fla. Stat. § 440.11(1)(a) (2009) (providing an exception to the workers' compensation exclusivity bar if Defendant fails to so secure payment of workers' compensation benefits). The Complaint contains no allegations regarding workers' compensation coverage. Thus, it is not apparent that Defendant satisfies this requirement.[6]

Additionally, Florida's courts hold that an employer's or carrier's actions or even omissions concerning a workers' compensation injury can, in certain circumstances, estop a defendant from raising the exclusivity bar. For example,

---

[6] The second statutory exception, the "intentional tort" exception, is discussed further herein at pages 17–19. Fla. Stat. § 440.11(1)(b) (2009).

in general an employer may not be able to assert the bar if it or its workers' compensation insurance carrier denies the workers' compensation claim on the basis that the employee's injury occurred outside the course and scope of employment. *See, e.g.*, *Coastal Masonry, Inc. v. Gutierrez*, 30 So. 3d 545, 548–49 (Fla. Dist. Ct. App. 2010). An employer telling an employee that no workers' compensation benefits are available for his injury to its carrier may also trigger estoppel. *Quality Shell Homes & Supply Co. v. Roley*, 186 So. 2d 837, 841 (Fla. Dist. Ct. App. 1966). Moreover, some recent case law holds that an employer's mere failure to timely report a known workplace injury to its carrier may preclude the employer from asserting the bar, particularly when the claim is later denied in part on the ground that the injury was not within the scope of employment. *Ocean Reef Club, Inc. v. Wilczewski*, 99 So. 3d 1, 4 (Fla. Dist. Ct. App. 2012) ("Where, as here, the employer fails to satisfy [its] duty to provide notice to the carrier of the possibility of a claim for workers' compensation benefits, the employer is estopped from asserting tort immunity as a defense in the resulting civil lawsuit for damages.")[7]

---

[7] In *Ocean Reef*, there was a vigorous dissent. Moreover, in that case, the employer did eventually report the injury (based on alleged exposure to chemical fumes in a beauty salon) to its carrier after the civil suit was filed. In the case at bar, it is unclear whether a workers' compensation claim was ever filed or if the carrier has ever been notified of any injury. Whether a workers' compensation claim filed after suit in this case would be untimely is also unclear. *See Timmeny v. Tropical Botanicals Corp.*, 615 So. 2d 811, 814 (Fla. Dist. Ct. App. 1993) (estoppel and/or tolling may apply in certain circumstances).

Plaintiff's Complaint contains no allegations concerning any workers' compensation claim. Plaintiff does, however, plausibly allege that he notified Defendant numerous times of his condition and planned surgery. Thus, Defendant's failure to notify its carrier and/or the carrier's response may estop Defendant from raising the workers' compensation exclusivity bar. 99 So. 3d at 2–3. In short, this issue cannot be decided on a motion to dismiss since the Court can only speculate about the actual facts.

It is therefore recommended that Defendant's Motion be denied. *See Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011). This result is consistent with the many Florida cases addressing application of the workers' compensation exclusivity bar not upon a motion to dismiss, but upon summary judgment. *See, e.g.*, *Hunt v. Corrections Corp. of Am.*, 38 So. 3d 173 (Fla. Dist. Ct. App. 2010); *Chorak v. Naughton*, 409 So. 2d 35 (Fla. Dist. Ct. App. 1981); *Mullarkey v. Florida Feed Mills, Inc.*, 268 So. 2d 363 (Fla. 1972); Grice *v. Suwannee Lumber Mfg. Co.*, 113 So. 2d 742 (Fla. Dist. Ct. App. 1959).

Plaintiff makes several other arguments in opposition to dismissal. Although the undersigned need not address these arguments, for purposes of completeness of this Report and Recommendation, the undersigned will do so.

Plaintiff asserts in his Response that the workers' compensation exclusivity bar cannot apply to his claims because "Plaintiff does not allege or contend that he was injured on the job, or by any action, injury or event that was within the scope of his employment." (Doc. 12 at 5.) However, it appears that the

14

Complaint does allege such an injury. (*See, e.g.*, Doc. 2 at ¶¶ 80, 102–04, 107, 109, 113–18, 120, 122, 126–27.)[8]  Moreover, it is unclear how Defendant could be liable at all if Plaintiff's injuries are not work-related.

"The Florida courts have established a two-part work-connectedness test for whether the exclusivity bar applies, which requires that a work-related injury must both (1) arise out of and (2) occur in the course of employment." *Locke v. SunTrust Bank*, 484 F.3d 1343, 1347 (11th Cir. 2007). "To be compensable, an injury must arise out of employment in the sense of causation and be in the course of employment in the sense of continuity of time, space, and circumstances." *Id.*

Construing the Complaint in the light most favorable to Plaintiff, the Complaint alleges that Plaintiff injured his back in two ways: (1) by sitting at work for prolonged periods in a damaging position[9] and (2) by undergoing back surgery as a result of Defendant's actions.[10]

---

[8] Indeed, Counts V and VI explicitly allege that Defendant breached "a duty of care to provide Plaintiff with a safe and healthy workplace." Florida's Workers' Compensation Law supplants negligence claims based upon this duty. *See Floval Oil Corp. v. Munoz*, 679 So. 2d 286, 286 (Fla. Dist. Ct. App. 1996) ("The plaintiffs first argued below that [Defendant] Floval was the decedent's employer, and therefore owed a duty to provide him with a safe work environment. The trial court correctly recognized that under this theory Floval would be immune from liability under the Workers' Compensation Act.")

[9] For example, Plaintiff alleges that he informed Defendant that "his condition was compounded by being 'forced to sit in an unvaried position for the remainder of the workday'" following his commute to work. (Doc. 2 at ¶ 36.) He also alleges that his supervisors and coworkers could observe "his awkward attempts to find a comfortable
(continued . . . )

The first method of injury clearly qualifies as work-related because it allegedly occurred while and because Plaintiff sat in his chair working. Although Plaintiff's second theory of injury may or may not provide a basis for recovery or compensation, and clearly Plaintiff's surgery did not occur while he was working, Plaintiff alleges that his surgery was the "direct and proximate" result of Defendant's decision to deny Plaintiff the opportunity to work from home and the constructive discharge that allegedly resulted. (Doc. 2 at ¶ 109.) Indeed, such an allegation appears necessary to even arguably connect Defendant to Plaintiff's own decision to have surgery. The only way to interpret Plaintiff's allegations to assert even an arguably plausible claim is that the surgery is not a separate act of negligence by Defendant, but rather a consequence of Plaintiff's prolonged sitting at work and Defendant's failure to alleviate such sitting. Thus, based on Plaintiff's own allegations, he appears to be alleging a work-related injury. Therefore, the undersigned recommends that this argument has no merit.

Plaintiff also argues that Defendant has not "demonstrated that these claims, as a matter of law, would be compensable" under Chapter 440. (Doc. 12

---

sitting position, his inability to sit in a given posture for any length of time, and his often contorted posture in sitting, standing or walking" (*Id.* at ¶ 25) and that one supervisor "commented frequently about her observations of the Plaintiff's apparent physical distress" (*Id.* at ¶ 29).

[10] Plaintiff, for example, alleges that "[t]here is a direct causal nexus between the Defendant's negligent and discriminatory acts, the Plaintiff's loss of employment by constructive discharge, his decision to undergo surgery, and the surgical failure which resulted in his total disability." (Doc. 2 at ¶ 80.)

16

at 2.) However, even assuming compensability is required for the exclusivity bar to apply, which the Court need not decide, Florida courts have held repetitive-type injuries compensable under the Workers' Compensation Law. For example, workers' compensation provides a remedy for a worker who develops cataracts from staring into a bright furnace, *Worden v. Pratt & Whitney Aircraft*, 256 So. 2d 209, 211 (Fla. 1971); a worker who develops carpal tunnel syndrome from twisting pliers while making plastic plugs, *Festa v. Teleflex, Inc.*, 382 So. 2d 122, 124 (Fla. Dist. Ct. App. 1980); and a worker who develops carpal tunnel syndrome from typing and using a mouse, *Rose v. GEICO*, 90 So. 3d 886, 889 (Fla. Dist. Ct. App. 2012). Thus, Plaintiff's claim may be compensable, a determination which this Court obviously cannot make.

Plaintiff also contends that he has alleged facts that would allow Counts IV–VI of his Complaint to fall within the second statutory exception to the workers' compensation exclusivity bar, for "intentional torts." Florida Statute § 440.11(1)(b) (2009) provides this exception. But it limits it as follows:

> For the purposes of this paragraph, an employer's actions shall be deemed to constitute an intentional tort and not an accident only when the employee proves, by clear and convincing evidence, that:
>
> 1.   The employer deliberately intended to injure the employee; or
>
> 2.   The employer engaged in conduct that the employer knew, based on prior similar incidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee, and the employee was not aware of the risk

> because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work.

*Id.*; s*ee also Hunt v. Corrections Corp. of Am.*, 38 So. 3d 173, 176 (Fla. Dist. Ct. App. 2010).

Plaintiff does not plausibly allege that Defendant committed an intentional tort within the Workers' Compensation Law's narrow meaning. Defendant's alleged failure to accommodate Plaintiff's desire to work from home is not an action "deliberately intended to injure" Plaintiff. *See* Fla. Stat. § 440.11(1)(b). Plaintiff does not contend otherwise in his Response. (*See* Doc 12.)

Plaintiff does, however, argue that Defendant knew that Plaintiff's injury was virtually certain to occur:

> Defendant, knowing that the results of their [sic] actions would result [sic] in an illegal discharge, and in [sic] knowing that the Plaintiff, as a result of that discharge, had elected surgery that he would not have otherwise elected, intentionally exposed the Plaintiff to harm of surgery.

(Doc. 12 at 7.)

But even if the Court accepts that Defendant knew that its actions would result in Plaintiff's constructive discharge and that Plaintiff would therefore have back surgery, Plaintiff still does not meet the exception's requirements. The exception requires Plaintiff to also prove that Defendant obtained its knowledge "based on prior similar incidents or on explicit warnings specifically identifying a known danger." Fla. Stat. § 440.11(1)(b) (2009). Further, the statute requires

18

Plaintiff to prove that he "was not aware of the risk because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent [Plaintiff] from exercising informed judgment about whether to perform the work." *Id.* Plaintiff alleges that he informed Defendant of the harm its actions would cause. Thus, he cannot plausibly contend that he was unaware of the risk or that Defendant concealed or misrepresented anything. In short, although the undersigned recommends that the Motion be denied for other reasons explained herein, it appears highly doubtful that Plaintiff will ultimately be able to satisfy the "intentional tort" exception to workers' compensation exclusivity if that becomes necessary.

## RECOMMENDATION

For the reasons expressed above, it is respectfully **RECOMMENDED** that:

Defendant's Motion (**Doc. 5**) be **DENIED** and that Defendant be **directed to answer Counts IV–VI of the amended complaint (Doc. 2).**

**DONE AND ENTERED** at Jacksonville, Florida on February 28, 2013.

_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

*Pro Se* Plaintiff